UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KELLY SUNDAY,

    Plaintiff,

v.                                       Case No. 8:20-cv-78-T-02AAS

BELLEAIR VILLAGE, LTD,
a Florida Limited Partnership;
Unknown Defendant #1; and
Unknown Defendant #2

    Defendants.
_____/

**ORDER GRANTING DEFENDANT'S UNOPPOSED MOTION TO DISMISS**

This matter comes to the Court on Defendant Belleair Village, LTD's Motion to Dismiss, Dkt. 23, Plaintiff Kelly Sunday's Second Amended Complaint, Dkt. 21. Defendant argues Plaintiff lacks standing because she failed to adequately show she will suffer a real and immediate injury-in-fact. Dkt. 23. Plaintiff did not file a response, which under the local rules deems Defendant's motion unopposed. *See* Local Rule 3.01(b). As further explained below, the Court grants Defendant's unopposed Motion to Dismiss.

**FACTUAL BACKGROUND**

Plaintiff Sunday is a disabled individual who requires the use of various aids to walk. Dkt. 21 at 2. She is a "tester" who visits public facilities to check whether

the facilities comply with the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"). *Id.* at 3. Defendant Belleair Village operates a motel in Largo, Florida. *Id.* at 4. Plaintiff accuses Defendant of discriminating against her and others by failing to remove architectural barriers to access in violation of the ADA. *Id.* at 7.

This Court has dismissed Plaintiff's claims twice before. Dkts. 16, 20. In March, the Court dismissed Plaintiff's Original Complaint because she failed to establish standing under Article III of the U.S. Constitution. Dkt. 16. In July, the Court dismissed Plaintiff's First Amended Complaint, finding that Plaintiff again failed to establish standing and that Defendant voluntarily remedied some of the alleged ADA violations, thereby mooting those claims. Dkt. 20.

Two weeks later, Plaintiff filed a Second Amended Complaint seeking injunctive relief through the ADA. Dkt. 21. She accuses Defendant of five ADA violations: (1) the kitchen sinks in some motel rooms are not accessible; (2) there is no pool chair lift; (3) outside staircases are open along the base, which could injure Plaintiff's head; (4) the customer-service counter is too high; and (5) there is no directional signage to ADA accommodations. *Id.* at 7.

Plaintiff has visited Defendant's motel one time. *Id.* at 8. The alleged purpose of this visit was to ascertain whether the motel was ADA accessible for

Plaintiff's parents, who are also both disabled and want to visit the area. *Id.* Plaintiff says she would join her parents during their stay. *Id.*

In her previous complaints, Plaintiff attested she would revisit the motel within 90 days to enjoy the motel's services and ensure Defendant complied with the ADA. Dkts. 1, 17. Now, in the Second Amended Complaint, Plaintiff says the following:

> Due to the COVID pandemic and travel restrictions, Plaintiff and her parents have been unable to patronize the Motel; however within 30 days after the unprecedented COVID pandemic, Plaintiff will revisit the Motel to ensure compliance with the ADA and 28 C.F.R. § 36.302(e) and will use the Motel and otherwise avail herself of the goods, services, features, facilities, benefits, advantages, amenities, and accommodations at the Motel provided the barriers have been removed.

Dkt. 21 at 8. Plaintiff also alleges that she frequently travels throughout the Tampa Bay area to visit her friends, attorneys, and medical providers. *Id.* at 3.

Defendant moves to dismiss the Second Amended Complaint, arguing Plaintiff lacks Article III standing. Dkt. 23. According to Defendant, Plaintiff failed to demonstrate a sufficient injury-in-fact to support her claim for injunctive relief. *Id.* Plaintiff did not file a response.

## LEGAL STANDARD

A motion to dismiss for lack of standing challenges subject-matter jurisdiction pursuant to Rule 12(b)(1). *See Doe v. Pryor*, 344 F.3d 1282, 1284

(11th Cir. 2003). There are two types of challenges against subject-matter jurisdiction: "facial" and "factual." *Makro Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008). A facial attack challenges subject-matter jurisdiction based on the allegations in the complaint. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). A factual attack challenges just that: the facts that allegedly support subject-matter jurisdiction. *Makro Capital*, 543 F.3d at 1258. For factual attacks, courts may consider extrinsic evidence, such as affidavits and testimony. *Id.* "Since such a motion implicates the fundamental question of a trial court's jurisdiction, a 'trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case' without presuming the truthfulness of the plaintiff's allegations." *Id.* (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)).

To establish standing, a plaintiff must demonstrate: (1) she suffered an "injury-in-fact"; (2) there is a causal connection between the asserted injury-in-fact and the challenged action of the defendant; and (3) the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). At issue here is the first requirement: an injury-in-fact.

## LEGAL ANALYSIS

To establish an injury-in-fact, a plaintiff must show that she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and

4

"actual or imminent." *Lujan*, 504 U.S. at 560. There is an additional requirement when the plaintiff seeks prospective injunctive relief: not only must the plaintiff show that the defendant's conduct injured her in the past, she must also demonstrate a sufficient likelihood that she will be injured by the defendant's conduct again in the future. *See Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1283 (11th Cir. 2001). This threat of future injury must be "real and immediate," rather than "conjectural or hypothetical." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013). It is not enough to merely plead an intent to return to a location someday, without any concrete plans, or indeed any specification of when that day will be. *See Lujan*, 504 U.S. at 564.

In the ADA context, courts frequently rely on the following factors when determining whether there is a sufficient threat of future injury: (1) the proximity of the defendant's business to the plaintiff's residence; (2) the plaintiff's past patronage of the defendant's business; (3) the definiteness of the plaintiff's plan to return; and (4) the frequency of the plaintiff's travel near the defendant's business. *See Houston*, 733 F.3d at 1337 n.6. These factors are not exclusive, nor is a single factor dispositive. *Id.* Rather, a court "must consider the totality of all relevant facts to determine whether a plaintiff faces a real and immediate threat of future injury." *Id.*

Here, it is a close call whether Plaintiff Sunday has alleged facts sufficient to satisfy the injury-in-fact requirement. The first and fourth factors support Plaintiff's position, while the second and third factors undermine it.

First, the proximity factor weighs in Plaintiff's favor. Plaintiff is a resident of Pinellas County. Dkt. 21 at 2. Defendant's motel is in Pinellas County. Dkt. 21 at 4. Although Plaintiff does not provide her home address or the exact distance between her home and Defendant's motel, there are roughly fifty miles between the northernmost tip of Pinellas County and the southernmost tip.[1] Accordingly, Plaintiff lives in relative proximity to Defendant's motel. *See Houston*, 733 F.3d at 1336–37 (ruling that plaintiff who lived thirty miles from the business in question had standing); *but c.f. Kennedy v. Beachside Com. Props., LLC*, 732 F. App'x 817, 822 (11th Cir. 2018) (ruling that plaintiff lacked standing in part because she lived 175 miles away from the business in question).

The second factor, which looks to Plaintiff's past patronage, cuts against Plaintiff. Plaintiff has visited the motel only once, and she has not attempted to return since her initial visit. Dkt. 21 at 8. Even if Plaintiff returns to Defendant's

---

[1] The Court estimated this distance through a Google Maps query between the northernmost point of Pinellas County and the southernmost point. *See* Google Maps, www.maps.google.com (last visited Sept. 24, 2020). The Court takes judicial notice of this fact. *See Munson S.S. Lines v. Newman*, 24 F.2d 416, 417 (5th Cir. 1928) (taking judicial notice of distance between cities); *United States v. Williams*, 476 F. Supp. 2d 1368, 1378 n.6 (M.D. Fla. 2007) ("A Court may take judicial notice of the driving distance between two points located in the record using mapping services whose accuracy cannot reasonably be questioned.").

6

motel in the future, this would not help her position here because the existence of standing is determined on the date suit is filed. *See Kennedy v. Solano*, 735 F. App'x 653, 655 (11th Cir. 2018) (per curiam) (stating it was immaterial that ADA plaintiff visited defendant's restaurant a second time after she filed suit). As such, Plaintiff's one-time visit does not establish she is a frequent patron of the motel. *See Kennedy v. Schling LLC*, Case No: 6:17-cv-74-ORL-22TBS, 2017 WL 6597119, at *3 (M.D. Fla. Nov. 14, 2017) (finding one visit to defendant's business did not establish that plaintiff was a frequent visitor); *but c.f. Houston*, 733 F.3d at 1340 (finding importance in the fact that plaintiff had shopped at defendant's supermarket several times before filing the case).

The third factor, which assesses the definitiveness of Plaintiff's plans to return to Defendant's premises, decisively cuts against Plaintiff. Plaintiff says she and her parents will patronize the motel "within 30 days after the unprecedented COVID pandemic[.]" Dkt 21 at 8. Although Plaintiff superficially gives a 30-day deadline, this is not a definitive plan to return to Defendant's motel. There are simply too many contingencies to make any risk of future harm actual or imminent. Importantly, it is unclear when the COVID-19 pandemic will end. It is also unclear when Plaintiff's parents will want to travel to Florida, and whether they will choose Defendant's motel as their accommodations. These contingencies turn Plaintiff's plans into a mere "someday" desire to return to the motel. Article

III requires more. *See Lujan*, 504 U.S. at 564 (ruling that plaintiff's professed intent to return to a place she has visited before is not sufficient to establish standing).

Finally, Plaintiff finds support in the fourth factor, which assesses how frequently Plaintiff travels near the location in question. Plaintiff lives in the same county as Defendant's motel. Dkt. 21 at 2, 4. Plaintiff also avers that she travels throughout the Tampa Bay area to visit friends, attorneys, and medical providers. *Id.* at 3. At this stage in the case, this is enough to show that Plaintiff frequently travels near Defendant's motel.

The Court finds that Plaintiff's future likelihood of injury is too speculative to be an injury-in-fact. The Eleventh Circuit instructs courts to focus "on the frequency of the plaintiff's visits to the defendant's business and the definitiveness of the plaintiff's plan to return." *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 832 (11th Cir. 2017). Plaintiff Sunday has visited Defendant's motel only once. Dkt. 21 at 8. It is unlikely this Pinellas County resident will be staying in a Pinellas County motel. Moreover, Plaintiff's intent to visit Defendant's motel thirty days after the end of COVID-19 is too speculative to support standing under Article III. *See Am. Civ. Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1193–94 (11th Cir. 2009) (finding that an anticipated injury must occur

within a fixed and specific time period). Plaintiff has simply failed to put forward a definite plan for her return to the motel.

This holding is supported by the Eleventh Circuit's decision in *Houston*. 733 F.3d at 1337. There, the Court ruled that an ADA tester had standing because the likelihood of future injury depended only on the tester's own volition, instead of being contingent on events that were speculative or beyond the tester's control. *Id*. This sharply contrasts with the case at hand, where Plaintiff Sunday's likelihood of future injury depends on the end of the COVID-19 pandemic—an event well beyond her control.

The Court's holding is also supported by the Eleventh Circuit's decision in *Beachside Com. Props.* 732 F. App'x at 822. There, the Court ruled that an ADA tester did not have standing because she visited the defendant's shop only one time and proffered only a vague intent to return without any concrete and realistic plan. *Id.* These facts are similar to the case at hand, where Plaintiff Sunday has visited Defendant's motel only once and has failed to proffer a concrete and realistic plan of return.

In sum, under this fact-sensitive inquiry, the Court concludes Plaintiff does not have standing to seek injunctive relief against Defendant. Her solitary visit to Defendant's motel and her lack of a concrete plan to return do not amount to a real and immediate threat of future injury. Because Plaintiff lacks standing, the Court is

without subject-matter jurisdiction over the case. *See Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014).

## CONCLUSION

Defendant Belleair Village LTD's unopposed Motion to Dismiss, Dkt. 23, is **GRANTED**. The clerk will close this file.

**DONE AND ORDERED** at Tampa, Florida, on September 25, 2020.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record